UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- x

TARA WILLIAMS, on behalf of herself and all
others similarly situated,

                         Plaintiff,

            -against-

BRISTOL-MYERS SQUIBB COMPANY,
GIOVANNI CAFORIO, CHARLES
BANCROFT, KAREN M. SANTIAGO, VICKI
L. SATO, PETER J. ARDUINI, ROBERT
BERTOLINI, MATTHEW W. EMMENS,
MICHAEL GROBSTEIN, ALAN J. LACY,
DINESH PALIWAL, THEODORE R.
SAMUELS, GERALD L. STORCH and KAREN
H. VOUSDEN,

                     Defendants.

------------------------------------------- x

Case No. 21 Civ. 9998

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1453, defendant

Bristol-Myers Squibb Company ("BMS") hereby removes this action from the Supreme Court of

the State of New York for the County of New York, where it currently is pending, to the

United States District Court for the Southern District of New York.

Federal subject matter jurisdiction arises under 28 U.S.C. § 1332(d)(2). *See also* 28 U.S.C.

§ 1453 (removal of class actions). This is a putative class action in which the putative class

consists of at least 100 members, the matter in controversy exceeds $5 million, and at least one

member of the putative plaintiff class is a citizen of a state different from any defendant. The case

is related to two prior-filed actions that are pending in this Court before U.S. District Judge

Jesse M. Furman, including an earlier-filed putative class action asserting claims under the federal

securities laws based on the same BMS disclosures. *See SM Merger/Arbitrage, L.P. v. Bristol-Myers Squibb Co.*, No. 1:21-cv-8255-JMF (S.D.N.Y.); *UMB Bank, N.A. v. Bristol-Myers Squibb Co.*, No. 1:21-cv-04897-JMF (S.D.N.Y.).

In accordance with 28 U.S.C. § 1446(a), BMS provides the following short and plain statement of the grounds for removal.

## I.    The Removed Action

1.    Plaintiff Tara Williams filed her complaint in this putative class action in the Supreme Court of the State of New York for the County of New York on November 2, 2021. An earlier version of the complaint was rejected by the clerk of the New York state court. On November 2, 2021, the clerk assigned Index No. 656179/2021 to the refiled, corrected complaint.

2.    On November 19, 2021, the parties entered into a stipulation under which defendants agreed to accept service of the summons and complaint as of November 18, 2021 and plaintiff agreed to extend all defendants' time to move, answer, or otherwise respond to the complaint until January 20, 2022. In the stipulation, plaintiff also voluntarily dismissed her claims without prejudice against defendant Karen Vousden, who resides outside of the United States.

3.    True and correct copies of the summons, the complaint, and the stipulation described in the preceding paragraph are attached to this notice as Exhibits 1, 2, and 3, respectively. There are no other filings in the New York court in this action. Plaintiff's allegations in the complaint are incorporated by reference.

4.    Plaintiff alleges that she was a purchaser of contingent value rights ("CVRs") that were part of the merger consideration provided by BMS in its merger with Celgene Corporation in 2019. Plaintiff asserts claims under sections 11(a) and 12(a)(2) of the Securities Act of 1933 on behalf of a putative class of "all persons or entities that received or purchased" CVRs based on

allegedly "false and misleading statements" contained in the registration statement under which the CVRs were issued.  Compl. ¶¶ 1, 4, 9, 84.

5.       BMS is a pharmaceutical company that the complaint alleges was the issuer of the CVRs.  *Id.* ¶¶ 10, 60, 86.  The individual defendants allegedly were members of the BMS board of directors or BMS officers who signed the registration statement.  *Id.* ¶¶ 11-24.

6.       The CVRs were issued pursuant to a Form S-4 registration statement filed by BMS with the U.S. Securities and Exchange Commission and declared effective on February 22, 2019.  Compl. at 2; *see id.* ¶ 60.  The CVRs were listed on the New York Stock Exchange and began trading after the closing of the Celgene merger transaction on November 20, 2019.  *Id.* ¶¶ 10, 60.

7.       Each CVR provided its holder the contingent right to receive a payment from BMS of $9 in cash but only if applications for three separate product candidates were approved by the U.S. Food and Drug Administration ("FDA") by contractual milestone dates.  *Id.* ¶ 34.  Plaintiff alleges that if all of the milestones had been met in time, BMS would have paid a total of $6.4 billion to CVR holders because there were more than 700 million CVRs outstanding.  *Id.* ¶¶ 35, 86.  However, if even one of the three applications was not approved by the FDA by the applicable milestone date, holders would not be entitled to any payment and the CVRs "would be cancelled."  *Id.*

8.       FDA approval of the biologics license application for liso-cel by December 31, 2020 was one of the three contractual milestone dates that needed to be met for there to be any payment under the CVRs.  *Id.*  Liso-cel is a cell therapy used for treatment of large B-cell lymphoma.  The FDA did not approve the liso-cel application by its milestone date.  As a result, the CVR agreement terminated and the CVRs were delisted.  *See id.* ¶¶ 58, 82.

9.     Based on alleged events that occurred long after the registration statement became effective, plaintiff alleges that the registration statement included material misstatements or omissions concerning the approval process for liso-cel, BMS's alleged preparedness to obtain FDA approval for liso-cel in time, and the probability that CVR holders would receive a cash payment. *See id.* ¶¶ 44-58, 61-68, 73-82.

10.     On the basis of these allegations, plaintiff asserts claims against all of the defendants under sections 11(a) and 12(a)(2) of the Securities Act on behalf of herself and all persons or entities who received or purchased CVRs through December 18, 2020. *Id.* ¶¶ 24, 84-86, 93-113.

## II.     Prior Pending Litigation Concerning the CVRs

11.     The removed action is one of several cases asserting claims against BMS concerning the CVRs.

12.     On October 6, 2021, an alleged purchaser of CVRs filed a putative class action complaint asserting claims against BMS and current or former members of its board of directors under sections 14(a) and 20(a) of the Securities Exchange Act of 1934. *See SM Merger/Arbitrage, L.P. v. Bristol-Myers Squibb Co.*, No. 1:21-cv-8255-JMF (S.D.N.Y.). That action is pending before U.S. District Judge Jesse M. Furman. The complaint in the *SM Merger/Arbitrage* action alleges that the defendants violated the Exchange Act based on alleged misstatements or omissions concerning the CVRs in the joint proxy statement / prospectus dated February 22, 2019. The joint proxy statement / prospectus is part of the registration statement that is the basis for plaintiff's Securities Act claims in this action.

13.     Under the Private Securities Litigation Reform Act of 1995, motions to be appointed as lead plaintiff and for approval of the lead plaintiff's selection of lead counsel in the

*SM Merger* action must be filed by no later than December 6, 2021. The Court has approved a stipulation under which the date for all defendants to respond to the complaint has been deferred until after a lead plaintiff has been appointed by the Court.

14.     Earlier, on June 3, 2021, UMB Bank, N.A., as trustee under the Contingent Value Rights Agreement dated as of November 20, 2019 (the "CVR Agreement"), filed an action asserting claims of breach of contract against BMS. That action also is pending before U.S. District Judge Jesse M. Furman. BMS's motion to dismiss the complaint has been fully briefed and is pending. *See UMB Bank, N.A. v. Bristol-Myers Squibb Co.*, No. 1:21-cv-04897-JMF (S.D.N.Y.).

15.     More recently, on November 12, 2021, another plaintiff filed an action asserting claims under the Securities Act on behalf of two separate classes, acquirors of CVRs and acquirors of BMS common stock, based on the same disclosures that are challenged in this action and in the first-filed *SM Merger* action. That action, *Bernstein v. Bristol-Myers Squibb Co.*, No. LCV2021646901, is pending in the Superior Court of New Jersey in Union County.

**III.     Grounds for Removal**

16.     This putative class action is subject to removal under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005) ("CAFA").[1]

**A.     The CAFA Requirements Are Met.**

17.     The action satisfies all of the statutory requirements for removal under CAFA. *See* 28 U.S.C. §§ 1332(d)(2), 1453(a). BMS is a Delaware corporation with its principal place of

---

[1] BMS reserves all of its defenses and other rights with respect to the claims asserted. In discussing plaintiff's allegations, BMS does not concede that plaintiff's allegations are true, that BMS or any of the other defendants can be held liable in this action, that any class should be certified in this action, or that plaintiff's alleged class definition is legally or factually tenable.

business in New York.  Compl. ¶ 10.  An action meeting CAFA's jurisdictional requirements can be removed "without regard to whether any defendant is a citizen of the State in which the action is brought[.]"  28 U.S.C. § 1453(b).

### 1.    This Is a "Class Action."

18.    This is a putative class action, *see* Compl. ¶¶ 1, 84-91; 28 U.S.C. §  1332(d)(1)(B) (definition of "class action"), and there are more than 100 class members in the putative class, 28 U.S.C. § 1332(d)(5)(B).  Plaintiff alleges that "there are, at minimum, ten[s] of thousands of members" of the putative class.  Compl. ¶ 86.  Where the complaint "plainly states that there are thousands" of class members, this CAFA jurisdictional requirement is satisfied.  *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006).

### 2.    "Minimal Diversity" Exists.

19.    "Minimal diversity" is present in this action within the statutory definitions in CAFA.  28 U.S.C. § 1332(d)(2); *see Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014) (CAFA "replaced the ordinary requirement of complete diversity . . . with a requirement of minimal diversity.").

20.    Plaintiff alleges that she is a resident of New York.  *See* Summons (venue allegation).

21.    The complaint does not include allegations concerning the citizenship of any of the individual defendants.  *See* Compl. ¶¶ 11-23.  Based on information known to BMS, the following defendants are citizens of states different from plaintiff: defendants Peter Arduini and Charles Bancroft are citizens of Pennsylvania; defendants Robert Bertolini, Giovanni Caforio, and Karen Santiago are citizens of New Jersey; defendant Alan Lacy is a citizen of California; defendant Dinesh Paliwal is a citizen of Connecticut; defendant Theodore Samuels is a citizen of Missouri; defendant Vicki Sato is a citizen of Massachusetts; and defendant Gerald Storch is a citizen of

Florida.  All of these defendants are citizens of different states than the named plaintiff (in addition

to absent putative class members), and minimal diversity is satisfied under 28 U.S.C.

§ 1332(d)(2)(A).

22.    In addition, minimal diversity exists because plaintiff asserts her claims on behalf

of a putative nationwide class; she alleges that more than 700 million CVRs were "actively traded

on the NYSE." Compl. ¶¶ 10, 86.  The NYSE is a "national securities exchange" as defined in the

federal securities laws.  *See* 15 U.S.C. § 78f(a).  Because there are putative class members

throughout the United States, there is more than a "reasonable probability" that there are members

of the putative "class of plaintiffs" who are "citizen[s] of a [s]tate different from any defendant."

28 U.S.C. § 1332(d)(2)(A); *see Blockbuster*, 472 F.3d at 59 ("it seems plain to us that Blockbuster

is able to meet its burden of showing there is a reasonable probability that at least one of these

class members is a citizen of New York and thus is 'a citizen of a State different from . . .

defendant'").

### 3.    The Amount-in-Controversy Exceeds $5 Million.

23.    The amount in controversy alleged in the complaint is greater than $5 million,

exclusive of interest and costs.  28 U.S.C. §§ 1332(d)(2), 1336(d)(6); *see Dart Cherokee Basin

Oper. Co. LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include

only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

24.    "CAFA explicitly provides for aggregation of each class member's claims in

determining whether the amount in controversy is at least $5,000,000." *Blockbuster*, 472 F.3d at

59 (citing 28 U.S.C. § 1332(d)(6)).    In determining whether the amount-in-controversy

requirement is met, courts apply "a rebuttable presumption that the face of the complaint is a good

faith representation of the actual amount in controversy," which can be overcome only where the

party resisting federal jurisdiction can "show to a legal certainty that the amount recoverable does

not meet the jurisdictional threshold." *Shulman v. Chaitman LLP*, 392 F. Supp. 3d 340, 354 (S.D.N.Y. 2019) (internal quotation marks omitted).

25.    The complaint does not specifically allege an amount of damages. However, plaintiff purports to assert claims for alleged securities violations on behalf of all "persons and entities that received or purchased the [CVRs] issued from the [r]egistration [s]tatement up through December 18, 2020." Compl. ¶ 84. The complaint alleges that if all of the conditions to payment on the CVRs had been satisfied, BMS "would [have] owe[d] the CVR holders a total of $6.4 billion." Compl. ¶ 35; *see also id.* ¶ 58 (alleging that failure to meet liso-cel milestone "destroy[ed] billions of dollars in potential value for CVR holders").

26.    While reserving all rights and defenses, BMS states upon information and belief based on plaintiff's allegations that the amount in controversy in this action exceeds $5 million.

### B.    CAFA Overrides the Removal Bar in 15 U.S.C. § 77v(a).

27.    The complaint mistakenly asserts that this action "is not removable." Compl. ¶ 5 (citing section 22(a) of the Securities Act, 15 U.S.C. § 77v(a)). To the contrary, the broad removal jurisdiction for class actions enacted in CAFA, 28 U.S.C. § 1453, overrides the removal bar in section 22(a) of the Securities Act. *See Owen v. Elastos Found.*, 438 F. Supp. 3d 187, 190-91 (S.D.N.Y. 2020) (following *Calif. Pub. Empl'ees Ret. Sys. v. WorldCom*, 368 F.3d 86, 90 (2d Cir. 2004) (holding that bankruptcy removal provision overrides § 22(a)); *see also Katz v. Gerardi*, 552 F.3d 558, 562 (7th Cir. 2009) (same); *N.J. Carpenters Vacation Fund v. Harborview Mortg. Loan Tr. 2006-4*, 581 F. Supp. 2d 581, 583 (S.D.N.Y. 2008) (same).[2]

---

[2] The Ninth Circuit reached the opposite conclusion in *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008). An important part of the panel's reasoning – that removal jurisdiction must be narrowly construed – was rejected in the more recent Supreme Court decision in *Dart Cherokee* in a way that even the Ninth Circuit has acknowledged is irreconcilable. *See Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 n.2 (9th Cir. 2015) ("[w]e are not bound by" *Luther* and other removal precedents because *Dart Cherokee* decision "undercuts the

**C.      Plaintiff Cannot Show That an Exception to Removal Jurisdiction Applies.**

28.      Once a defendant has carried its burden to establish a basis for federal subject matter jurisdiction, the burden shifts to the party opposing removal to demonstrate that a statutory exception to removal jurisdiction applies.  *See Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010); *Anderjaska v. Bank of Am., N.A.*, 2020 WL 1503418, at \*2 (S.D.N.Y. Mar. 30, 2020).  If plaintiff opposes removal, it cannot meet its burden here.

29.      Most specifically, the statutory exception to removal does not apply for "a claim concerning a covered security," as that term is defined in provisions added to the federal securities laws by the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 (1998) ("SLUSA").  28 U.S.C. § 1453(d)(1); *see* 28 U.S.C. § 1332(d)(9)(A) (same).[3]

30.      The "covered security" exception was enacted to ensure that CAFA did not interfere with jurisdiction and removal provisions enacted in SLUSA.  The "overall design" of the two statutes was "to assure that the federal courts are available for all securities cases that have national impact (*including those that involve securities traded on national exchanges*) . . . ." *Estate of Pew v. Cardarelli*, 527 F.3d 25, 32 (2d Cir. 2008) (emphasis added).

31.      BMS is not invoking SLUSA as a basis for removal of this putative class action.  In contrast with CAFA, SLUSA "prohibits certain securities class actions *based on state law*" and provides for removal of those actions so that they can be dismissed in federal court.  *Cyan Inc. v. Beaver County Empl'ees Ret. Fund*, 138 S. Ct. 1061, 1067-68 (2018) (emphasis added); *see also*

---

theory or reasoning" underlying those decisions).  The questionable *Luther* holding does not govern in this Circuit regardless.  *See WorldCom*, 368 F.3d at 90 (broad and more recently enacted bankruptcy removal provision overrides § 22(a) of the Securities Act).

[3] "Covered securities," generally, are securities that are traded on a national exchange.  *See* 15 U.S.C. § 77p(f)(3) (Securities Act definition).

*Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 645 n.12 (2006) (explaining that SLUSA "avails a defendant of a federal forum in contemplation not of further litigation over the merits of a claim brought in state court, but of termination of the proceedings altogether"). SLUSA did not purport to address jurisdiction or removal concerning Securities Act cases filed in state court. *Cyan*, 138 S. Ct. at 1069.

32.    The Second Circuit recognizes that CAFA's "covered security" exception does not apply to state court class actions that assert only Securities Act claims. *See Cardarelli*, 527 F.3d at 30 (exception to CAFA "carves out class actions for which jurisdiction exists elsewhere under federal law, such as under [SLUSA], *i.e.*, *state-law fraud claims* in connection with the purchase or sale of securities traded on a national stock exchange[.]") (emphasis added); *see Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012) (quoting Second Circuit interpretation with approval); *Owen*, 438 F. Supp. 3d at 193 (*Cyan* not only says "nothing whatsoever about CAFA, it dealt only with a statute whose clear text did not authorize the removal of Securities Act class actions. That is not the situation here, because CAFA does provide explicit authorization for removal of such actions.").

33.    CAFA was enacted to address "[a]buses in class actions" that "undermine[d] the national judicial system" and to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of *interstate cases of national importance* under diversity jurisdiction[.]" Pub. L. No. 109-2, §§ 2(a)(4), 2(b)(2) (emphasis added). This action, which involves allegations of federal securities violations in a registration statement for a $74 billion merger transaction, *see* Compl. ¶ 1, unquestionably is such a case.[4]

---

[4] Other CAFA exceptions also do not apply. The primary defendants are not "States, State officials, or other governmental entities[.]" 28 U.S.C. § 1332(d)(5)(A). This is not a primarily "local" controversy in which a substantial majority of putative class members are from New York.

10

**IV.     All Other Statutory Requirements Are Satisfied.**

34.     This Court is the proper federal district for the removal of the action because it is the federal district embracing the place where the action is pending.  28 U.S.C. §§ 1446(a), 1453(b).

35.     The notice of removal is timely.  28 U.S.C. § 1446(b); *see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) ("[W]e hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.").

36.     Consent to removal of the other named defendants is not required when an action is removed under the CAFA removal provision.  28 U.S.C. § 1453(b).

37.     BMS will provide written notice to plaintiff of the filing of this Notice of Removal in accordance with 28 U.S.C. § 1446(d).

38.     A copy of this notice will be filed with the Clerk of the Supreme Court of the State of New York in and for the County of New York in accordance with 28 U.S.C. § 1446(d).

39.     This notice of removal is signed pursuant to Fed. R. Civ. P. 11.  *See* 28 U.S.C. § 1446(a).

40.     By filing this notice of removal, BMS does not waive any defenses, claims, arguments, or rights of any kind.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

28 U.S.C. § 1332(d)(4).  The claims at issue are asserted under federal securities law and involve matters of national or interstate interest.  *See* 28 U.S.C. § 1332(d)(3).  Finally, plaintiff's claims do not concern either "corporate governance" or "disputes over the meaning of the terms of a security[.]"  *Cardarelli*, 527 F.3d at 30, 33; *see* 28 U.S.C. §§ 1332(d)(9)(B), (C), 1453(d)(2), (3).

WHEREFORE, BMS hereby removes this action to the United States District Court for the

Southern District of New York from the Supreme Court of the State of New York in and for the

County of New York.

Dated: New York, New York
        November 24, 2021

DLA PIPER LLP (US)


By:  /s/ John J. Clarke, Jr.
      John J. Clarke, Jr.

1251 Avenue of the Americas
New York, New York 10020
Tel:  (212) 335-4500
john.clarke@dlapiper.com

*Attorneys for Defendant*
 *Bristol-Myers Squibb Company*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2021, I caused a true and correct copy of the foregoing Notice of Removal to be served on the following via the New York State Court Electronic Filing system and first-class mail:

> Lee Squitieri
> Squitieri & Fearon, LLP
> 424 Madison Avenue, 3rd Floor
> New York, New York 10017
> (212) 421-6492
>
> *Attorneys for Plaintiff*

> /s/ John J. Clarke, Jr.
> John J. Clarke, Jr.

EAST/186173969